UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

JUSTYNA BANACHIEWICZ,                                    **Docket No.:**

      *Plaintiff,*

                  **COMPLAINT**
  -against-

ADVANCED PLUMBING, MECHANICAL &                         **PLAINTIFF DEMANDS**
SPRINKLERS CORP., CARL TERMINE, JR.                      **A TRIAL BY JURY**
and KRZYSZTOF TYLUTKI,

      *Defendants.*
-------------------------------------------------------------------X

   Plaintiff Justyna Banachiewicz, as and for her Complaint, respectfully alleges, all upon

information and belief, as follows:

<h2 style="text-align:center">JURISDICTION AND VENUE</h2>

   1.  This Court has original jurisdiction over the subject matter of this litigation

pursuant to 28 U.S.C. §1331, in that certain of the Plaintiff's claims arise under the laws of the

United States, namely the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq.* ("FLSA"), and

supplemental jurisdiction exists over the remainder of Plaintiff's claims under §8-107(1)(a) and

(6) of the New York City Human Rights Law, as well as the New York Labor Law.

   2.  Venue is proper under 28 U.S.C §1391(b) and (d) because one or all of the

Defendants maintain contacts within this District that would be sufficient to subject them to

personal jurisdiction if this District were a separate State.

<h2 style="text-align:center">IDENTITY OF THE PARTIES</h2>

   3.  At all relevant times mentioned herein, Plaintiff Justyna Banachiewicz

("Banachiewicz," pronounced "bana-shevitz") was employed by Defendant Advanced Plumbing,

Mechanical & Sprinklers Corp., Carl Termine, Jr. and/or Krzysztof Tylutki until she was

constructively discharged on January 23, 2023 because of her gender, pregnancy and caregiver status.

4.     At all relevant times, Defendant Advanced Plumbing, Mechanical & Sprinklers Corp. ("Advanced Plumbing") is a corporation duly organized and existing under the laws of the State of New York and operates in the City and State of New York, where Banachiewicz was employed.

5.     Advanced Plumbing is a premier plumbing and heating contractor in New York City that was founded in 1997.

6.     At all relevant times, Defendant Carl Termine, Jr. ("Termine") was the President of Advanced Plumbing and had managerial or supervisory authority over Banachiewicz.

7.     At all relevant times, Defendant Krzysztof Tylutki ("Tylutki") was the Vice President of Advanced Plumbing and was Banachiewicz's direct supervisor, so that he had managerial or supervisory responsibility over Banachiewicz.

**<u>BACKGROUND RELEVANT TO ALL CAUSES OF ACTION</u>**

8.     Banachiewicz commenced her employment with Defendants in or around April 2016.

9.     At all relevant times, Banachiewicz was qualified for her employment with Defendants.

10.     At the time of her hire, Banachiewicz worked as a Drafter, with responsibilities that included, among other things, designing and coordinating shop drawings for plumbing and sprinkler systems for commercial, industrial, and residential buildings; preparing hydraulic calculations for outgoing projects; creating material stock listing analyzing changes to the

2

drawings; solving design problems that arise during installation; and coordinating with the project and building engineers, installation technicians, design team, and management.

11.     In or around 2018, Banachiewicz was assigned to work as an Estimator and Project Manager, which came with a raise of approximately $2.00 per hour, and she had responsibilities that included, among other things, preparing job-specific proposal documentation for potential projects and clients; reviewing plans and specifications to determine the proposed scope of work; obtaining quotes and working closely with vendors, suppliers and the purchasing department; coordinating with subcontractors and suppliers to ensure accurate and competitive pricing; preparing and maintaining control of documents such as requests for information, drawing revisions, purchasing records, change orders, logs and work schedules, providing management of project logistics, organization, safety, and workforce utilization; and coordinating with the Foreman and billing department.

**<u>Discrimination Claims</u>**

12.     Despite Banachiewicz's diligent work and contribution, Defendants persistently degraded Banachiewicz, unfairly blaming her for issues that were actually created by the men in the office, such as Tylutki yelling at Banachiewicz if she made a mistake, or if he perceived that she had made a mistake, while telling the male employees who made mistakes, "Guys, it's okay" and "mistakes happen," and creating a work environment where a male project manager felt empowered to draw a vulgar picture of a penis on a purchase order given to Banachiewicz.

13.     Banachiewicz's work environment became even more difficult, however, after she advised Defendants that she was pregnant with her first child in or around April or May of 2021.

3

14.     For example, when Banachiewicz told her direct supervisor Tylutki that she was pregnant, his response was, **"I hope your job is not going to suffer because of this."**

15.     Tylutki also criticized Banachiewicz for needing to attend doctor's appointments, most of which she tried to schedule outside of working hours.

16.     Additionally, on or about August 9, 2021, Banachiewicz was slightly late due to traffic and, when she arrived, Tylutki yelled that he would fire her if she was ever late again because everyone is replaceable, which he never said to any of the men that were late.

17.     Tylutki humiliated Banachiewicz during a morning meeting on August 23, 2021, when he responded to Banachiewicz's legitimate request for clarification by saying Banachiewicz should "focus" because **"pregnancy brain is taking over"** and that if she does not remember something, **she "should eat less butter."**

18.     Tylutki ridiculed Banachiewicz for needing to use the restroom more frequently because she was pregnant, even though she only took short bathroom breaks that lasted minutes, while male employees were permitted to use the restroom for much longer without issue.

19.     In September 2021, Tylutki complained to Banachiewicz that she was taking off too much time due to doctors' appointments and the Jewish holidays, even though Tylutki knew that Banachiewicz is an Orthodox Jew.

20.     On October 23, 2021, Banachiewicz went to a medical appointment after work and was sent to the hospital due to high blood pressure, where she was admitted and treated for preeclampsia.

21.     Banachiewicz continued to work while she was in the hospital and ultimately gave birth on October 28, 2021.

4

22.     Banachiewicz took a maternity leave that was less than seven weeks long, and which was unpaid.

23.     Banachiewicz remained in contact with the office during her maternity leave and even worked several hours each week, though she was not paid for that time.

24.     When Banachiewicz returned from maternity leave on or about December 13, 2021, Tylutki's first comment to Banachiewicz was, **"How was your vacation?"**

25.     Following her return, Tylutki would routinely yell at Banachiewicz for the mistakes made by the person who had filled in for her as Estimator during her maternity leave, telling her, **"You decided to abandon the company. It's not your replacement's fault. He doesn't know how to do estimating."**

26.     In or around January 2022, Banachiewicz learned that she was pregnant with her second child.

27.     When Banachiewicz told Tylutki soon thereafter, his response was, **"Congratulations. Hopefully you will not abandon us like before and we will not lose so much money because of you,"** which was degrading to Banachiewicz, particularly since Banachiewicz had worked diligently to remain on top of her responsibilities and had even worked during her maternity leave.

28.     Termine, the owner, discriminatorily believed that Banachiewicz did not want to work because she was pregnant for the second time, telling her, with Tylutki present, that she was **"more interested in having kids than working,"** that she would **"probably stop working and will just sit home and have one kid after another because that's what women do,"** which was not true and which Banachiewicz told them was not true.

5

29.     Defendants made Banachiewicz's second pregnancy even more difficult, as Tylutki persisted in making unjustified negative comments about her work and disparaging her every time she had a doctor's visit, such as asking Banachiewicz, **"Do you have to go?"** and **"How many days have you taken off already because of your kids?"** even though she was responding to emails at the doctor's offices and during iron infusions that were required to prevent preeclampsia.

30.     When Banachiewicz was required to take time off because of her own health or for the health of her infant daughter, Tylutki stated, **"I have kids and never had to take off for that,"** completely ignoring that he had a wife who mostly stayed at home to take care of the children.

31.     During one occasion where Banachiewicz was taking her blood pressure at work, out of concern for preeclampsia, Tylutki told Banachiewicz that high blood pressure is "not a big deal" and that Tylutki has high blood pressure because of work and "he is managing," and asked, **"Are all pregnant women so dramatic?"**

32.     On or about February 22, 2022, Tylutki yelled at Banachiewicz for a mistake made by the person who had replaced Banachiewicz during her maternity leave, stating that the mistake would not have happened if she **"hadn't taken vacation."**

33.     In April 2022, Banachiewicz requested to take off for the Passover holiday, as she had in previous years, to which Tylutki responded, **"But you just came back from vacation,"** referring to her maternity leave.

34.     It was not until the office manager, Zuzana Zalewski, advocated for Banachiewicz and told Termaine and Tylutki that maternity leave is not a "vacation" that she was permitted to take off for the Passover holiday.

6

35.     Defendants failed to provide Banachiewicz with a reasonable accommodation or engage in an interactive process with Banachiewicz regarding complications that she experienced during her second pregnancy.

36.     For example, in July 2022, Banachiewicz provided Tylutki with a medical note from her provider advising Banachiewicz to stop working due to pregnancy-related complications.

37.     Even though Banachiewicz's medical provider had recommended that she cease working altogether, Banachiewicz asked Tylutki if she could work from home as a reasonable accommodation.

38.     Tylutki, however, failed to engage in any type of cooperative dialogue and merely laughed and said he "doesn't care," and Banachiewicz was required to continue working at the office.

39.     On August 8, 2022, after working until 1:00 pm, Banachiewicz went to the hospital in the evening for a scheduled induction, due to concerns about preeclampsia, and Banachiewicz continued working while she was in the hospital that night, and her second child was born on August 9, 2022.

40.     Banachiewicz had trained her replacement in advance of her maternity leave that would last just six weeks, including preparing templates of all the work she did.

41.     Banachiewicz was even working while she was in the hospital, just hours before giving birth.

42.     Banachiewicz, through her own diligence, learned about New York Paid Family Leave and was able to utilize that during her second maternity leave, though Defendants never informed her of this benefit.

43.     Banachiewicz returned from maternity leave on or about September 19, 2022.

44.     Tylutki again blamed Banachiewicz's maternity leave for the company's problems, saying loudly in the office that Banachiewicz was "not doing her job" because her replacement failed to submit the report that Banachiewicz had been working on and which Banachiewicz could not have submitted because she was in the hospital giving birth.

45.     Banachiewicz also learned that her replacement had complained that the estimating duties were too much work for him and the company offered him an assistant, even though estimation was just one part of Banachiewicz's responsibilities, and when she had complained that the workload was too much, she was told she "should be more organized."

46.     Banachiewicz was not permitted to return to her prior duties, but was rather assigned to work in purchasing, which was an undesirable assignment, and when Banachiewicz told Tylutki that she did not want to be in purchasing, Tylutki responded by saying she could "pack [her] stuff and leave" if she did not want the position, but Banachiewicz needed her job and remained.

47.     Termine confirmed to Banachiewicz, upon her return from her second maternity leave, that he had hired a man to fill her position while she was on leave, although he also indicated that he was happy with her work.

48.     Tylutki's degrading comments about Banachiewicz's status as a mother and caregiver persisted, such as when Banachiewicz requested to leave early on Fridays to relieve the babysitter who also needed to be home for Shabbat, saying, **"So your kids can't take care of themselves,"** even though they were literally babies, and degrading Banachiewicz for taking off a day for a scheduled surgery for her younger daughter, saying, **"She can't go by herself?"**

8

49.     Banachiewicz complained to Tylutki that his treatment of her was causing her to suffer panic attacks and high anxiety, but he just laughed at her and walked away.

50.     In fact, on one occasion, Banachiewicz suffered a panic attack at work and her husband picked her up and took her to the hospital, and when she told Tylutki about what happened the next day and why she had to leave work, he callously stated, "Hopefully you will not claim it was my fault."

51.     Banachiewicz complained multiple times to Termine about Tylutki's behavior, and while Tylutki would sometimes temporarily change his behavior for a week thereafter, he routinely returned to demeaning and discriminating against Banachiewicz because of her gender, pregnancy and caregiver status.

52.     At the end of 2022, Banachiewicz was given a bonus of $3,500, even though she had previously been given a bonus of $4,000.

53.     Termine later told Banachiewicz that her bonus had been cut because of the time she missed during her maternity leave, meaning that Banachiewicz's compensation was directly reduced because she had taken maternity leave.

54.     Tylutki continued to treat Banachiewicz less well than her male counterparts, which included on December 20, 2022, when Banachiewicz and two male dispatchers were late to work due to a truck blocking an exit, yet Tylutki falsely complained that Banachiewicz was "always late" and should "plan better," but joked with the male employees that the exit is "always busy."

55.     Tylutki's discriminatory hostility reached its peak on January 23, 2023, when Tylutki screamed and yelled at Banachiewicz for a male employee's failure, accusing her of

"never" doing her job and falsely stating that "everyone" is complaining about her, telling her she was "the worse employee ever," and stating that she was "always going to the bathroom."

56.     While Banachiewicz had repeatedly dealt with Tylutki's tirades, his outburst on January 23, 2023 reached a new level and frightened Banachiewicz and made her concerned for her personal well-being.

57.     Banachiewicz found her work environment so unpleasant and hostile that she was forced out of Defendants' workplace, as any reasonable individual in Banachiewicz's position would feel.

58.     Banachiewicz was constructively discharged on January 23, 2023.

**Wage & Hour Claims**

59.     In addition to discriminating against Banachiewicz because of her gender, pregnancy, and caregiver responsibilities, Defendants also engaged in wrongful conduct with regard to Banachiewicz's wages.

60.     Banachiewicz generally worked 48-56 hours per week, averaging approximately 50-53 hours per week.

61.     Banachiewicz was paid on an hourly basis and, at the time she was constructively discharged from Advanced Plumbing, she was earning approximately $32/hour.

62.     Defendants failed to pay Banachiewicz time-and-a-half for the hours she worked over 40 hours per week.

63.     Defendants paid Banachiewicz in cash for years, from the time she first started in or around April 2016 through in or around March 2020.

64.     When Banachiewicz returned from her first maternity leave that lasted from October 23, 2021 through December 13, 2021 – which was unpaid – Defendants paid Banachiewicz in cash for the remainder of 2021.

65.     Defendants never provided Banachiewicz with an annual wage theft prevention form, as required by New York State Law.

66.     Upon information and belief, Defendants willfully failed to post notices of the applicable overtime wage requirements in a conspicuous place at the location of their employment as required by New York Labor Law.

67.     Upon information and belief, Defendants willfully failed to keep contemporaneous payroll records as required by New York Labor Law.

68.     Upon information and belief, Defendants willfully failed to maintain accurate employee payroll and wage records as required by New York Labor Law.

69.     As a result of these various violations of wage and hour laws, Banachiewicz seeks compensatory damages and liquidated damages, as well as interest, attorney's fees, costs, and all her legal and equitable remedies available as this Court deems appropriate.

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF
OF BANACHIEWICZ AGAINST ALL DEFENDANTS FOR
PREGNANCY DISCRIMINATION IN VIOLATION OF §8-107(1)(a)
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

70.     Banachiewicz repeats, re-alleges and incorporates in full paragraphs 1 through 66 of this Complaint as though fully set forth at length herein.

71.     At the time that Banachiewicz was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her pregnancy.

11

72.     Throughout the time of her employment with Defendants, Banachiewicz was fully qualified for her position and was in a position to continue working in that capacity.

73.     Defendants treated Banachiewicz less well because of her pregnancy, including by derogatorily referring to Banachiewicz's maternity leaves as "vacation," paying her a reduced bonus because she took maternity leave, and humiliating Banachiewicz by telling her that she was "more interested in having kids than working" and that she would "probably stop working and will just sit home and have one kid after another because that what women do," all of which gives rise to a very real inference of pregnancy discrimination.

74.     The aforementioned acts of Defendants constitute unlawful pregnancy discrimination against Banachiewicz in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (referred to herein as "The New York City Human Rights Law"), which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

75.     As a result of Defendants' violations of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to Banachiewicz pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

76.     As a result of Defendants' discriminatory conduct, Banachiewicz has suffered actual and prospective financial loss, which Banachiewicz alleges to be in the amount of Two Million Dollars ($2,000,000).

77.     Here, Defendants' conduct toward Banachiewicz shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Banachiewicz's rights under the New York City Human Rights Law, or that their unlawful actions against Banachiewicz were so reckless as to amount to a disregard of Banachiewicz's rights, so that in addition to the actual and prospective financial loss suffered by Banachiewicz, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

78.     Banachiewicz, therefore, seeks compensatory damages on this First Cause of Action, including, among other things, the financial and emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this First Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF BANACHIEWICZ AGAINST ALL DEFENDANTS FOR GENDER DISCRIMINATION IN VIOLATION OF §8-107(1)(a) OF THE NEW YORK CITY HUMAN RIGHTS LAW

79.     Banachiewicz repeats, re-alleges and incorporates in full paragraphs 1 through 75 of this Complaint as though fully set forth at length herein.

80.     At the time that Banachiewicz was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her gender.

81.     Throughout the time of her employment with Defendants, Banachiewicz was fully qualified for her position and was in a position to continue working in that capacity.

82.     Defendants treated Banachiewicz less well because of her gender, including by degrading Banachiewicz because of her gender and blaming for things that were actually the result of other male employees, all of which gives rise to a very real inference of gender discrimination.

83.     The aforementioned acts of Defendants constitute unlawful gender discrimination against Banachiewicz in violation of §8-107(1)(a) of the New York City Human Rights Law, which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

84.     As a result of Defendants' violations of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to Banachiewicz pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

85.     As a result of Defendants' discriminatory conduct, Banachiewicz has suffered actual and prospective financial loss, which Banachiewicz alleges to be in the amount of Two Million Dollars ($2,000,000).

86.     Here, Defendants' conduct toward Banachiewicz shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Banachiewicz's rights under the New York City Human Rights Law, or that their unlawful actions against Banachiewicz were so reckless as to amount to a disregard of Banachiewicz's rights, so that in addition to the actual and

14

prospective financial loss suffered by Banachiewicz, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

87.     Banachiewicz, therefore, seeks compensatory damages on this Second Cause of Action, including, among other things, the financial and emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Second Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

<div align="center">

**AS AND FOR A THIRD CAUSE OF ACTION ON
BEHALF OF BANACHIEWICZ AGAINST ALL
DEFENDANTS FOR CAREGIVER STATUS
DISCRIMINATION IN VIOLATION OF §8-107(1)(a)
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

</div>

88.     Banachiewicz repeats, re-alleges and incorporates in full paragraphs 1 through 84 of this Complaint as though fully set forth at length herein.

89.     At the time that Banachiewicz was subjected to the discriminatory conduct described herein, she was in a protected class under the New York City Human Rights Law because of her status as a caregiver for her young children.

90.     Throughout the time of her employment with Defendants, Banachiewicz was fully qualified for her position and was in a position to continue working in that capacity.

91.     Defendants treated Banachiewicz less well because of her caregiver status, including by degrading Banachiewicz for having to take care of her children by asking, "So your

kids can't take care of themselves," all of which gives rise to a very real inference of gender discrimination.

92.     The aforementioned acts of Defendants constitute unlawful caregiver status discrimination against Banachiewicz in violation of §8-107(1)(a) of the New York City Human Rights Law, which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived . . . caregiver status . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

93.     As a result of Defendants' violations of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to Banachiewicz pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

94.     As a result of Defendants' discriminatory conduct, Banachiewicz has suffered actual and prospective financial loss, which Banachiewicz alleges to be in the amount of Two Million Dollars ($2,000,000).

95.     Here, Defendants' conduct toward Banachiewicz shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Banachiewicz's rights under the New York City Human Rights Law, or that their unlawful actions against Banachiewicz were so reckless as to amount to a disregard of Banachiewicz's rights, so that in addition to the actual and prospective financial loss suffered by Banachiewicz, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in the further amount of Three

Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

96.     Banachiewicz, therefore, seeks compensatory damages on this Third Cause of Action, including, among other things, the financial and emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this Third Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

## AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF BANACHIEWICZ AGAINST ALL DEFENDANTS FOR FAILING TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF §8-107(22) OF THE NEW YORK CITY HUMAN RIGHTS LAW

97.     Banachiewicz repeats, re-alleges and incorporates in full paragraphs 1 through 96 of this Complaint as though fully set forth at length herein.

98.     Defendants refused to provide Banachiewicz with a reasonable accommodation during her second pregnancy, refusing to even consider Banachiewicz's request to work remotely, even though her medical provider's letter advised that she should not be working at all, with Tylutki laughing and saying he "doesn't care."

99.     Defendants' failure to provide Banachiewicz with a reasonable accommodation for her pregnancy was in direct violation of §8-107(22)(a) of the New York City Human Rights Law, which provides:

> It shall be an unlawful discriminatory practice for an employer to refuse to provide a reasonable accommodation, as defined in section 8-102, to the needs of an employee for the employee's pregnancy, childbirth, or related medical condition that will allow the employee

to perform the essential requisites of the job, provided that such employee's pregnancy, childbirth, or related medical condition is known or should have been known by the employer.

100.    As a result of Defendants' violations of the New York City Human Rights Law §8-107(22)(a), Defendants are liable to Banachiewicz pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

101.    As a result of Defendants' discriminatory conduct, Banachiewicz has suffered actual and prospective financial loss, which Banachiewicz alleges to be in the amount of Two Million Dollars ($2,000,000).

102.    Here, Defendants' conduct toward Banachiewicz shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Banachiewicz's rights under the New York City Human Rights Law, or that their unlawful actions against Banachiewicz were so reckless as to amount to a disregard of Banachiewicz's rights, so that in addition to the actual and prospective financial loss suffered by Banachiewicz, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

103.    Banachiewicz, therefore, seeks compensatory damages on this Fourth Cause of Action, including, among other things, the financial and emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in

this Fourth Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF
BANACHIEWICZ AGAINST ALL DEFENDANTS FOR FAILING
TO ENGAGE IN THE COOPERATIVE DIALOGUE IN VIOLATION
OF §8-107(28) OF THE NEW YORK CITY HUMAN RIGHTS LAW**

104.     Banachiewicz repeats, re-alleges and incorporates in full paragraphs 1 through 103 of this Complaint as though fully set forth at length herein.

105.     Defendants were obligated to engage in a cooperative dialogue Banachiewicz related to her pregnancy related condition under the New York City Human Rights Law.

106.     Rather than engage in a dialogue to find an accommodation that would work for both Banachiewicz and Defendants in response to Banachiewicz's medical provider's recommendation to stop working, Tylutki simply laughed at Banachiewicz and said he "doesn't care."

107.     The aforementioned acts of Defendants constitute a violation of §8-107(28)(a)(3) of the New York City Human Rights Law, which specifically applies to "pregnancy, childbirth or a related medical condition," and provides, *inter alia* that:

> It shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation.

108.     Defendants also violated §8-107(28)(d) of the New York City Human Rights Law, which required Defendants, "[u]pon reaching a final determination at the conclusion of a

19

cooperative dialogue," to provide Banachiewicz with "a written final determination identifying any accommodation granted or denied," yet Defendants failed to do so.

109. As a result of Defendants' violations of the New York City Human Rights Law §8-107(28), Defendants are liable to Banachiewicz pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

110. As a result of Defendants' discriminatory conduct, Banachiewicz has suffered actual and prospective financial loss, which Banachiewicz alleges to be in the amount of Two Million Dollars ($2,000,000).

111. Here, Defendants' conduct toward Banachiewicz shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Banachiewicz's rights under the New York City Human Rights Law, or that their unlawful actions against Banachiewicz were so reckless as to amount to a disregard of Banachiewicz's rights, so that in addition to the actual and prospective financial loss suffered by Banachiewicz, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in the further amount of Three Million Dollars ($3,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

112. Banachiewicz, therefore, seeks compensatory damages on this Fifth Cause of Action, including, among other things, the financial and emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in

this Fifth Cause of Action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS AND FOR A SIXTH CAUSE OF ACTION, IN THE
ALTERNATIVE, AGAINST TERMINE & TYLUTKI
INDIVIDUALLY FOR AIDING AND ABETTING
DISCRIMINATION IN VIOLATION OF §8-107(6)
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

113.   Banachiewicz repeats, re-alleges and incorporates in full paragraphs 1 through 112 of this Complaint as though fully set forth at length herein.

114.   Should either Termine or Tylutki be determined to not be individually liable under Administrative Code §8-107(1)(a) for any reason, then Termine and Tylutki should each be held personally liable for aiding, abetting and compelling the discrimination against Banachiewicz, as more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof.

115.   As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, Termine and Tylutki each aided, abetted and compelled the discrimination against Banachiewicz, so that, should either be deemed to have not been Banachiewicz's employer, he should be held personally liable for unlawful aiding and abetting against Banachiewicz in violation of §8-107(6) of the New York City Human Rights Law, which states, *inter alia*:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

116.   Termine and Tylutki each aided and abetted Advanced Plumbing and/or each other to engage in the conduct complained of and, as a direct result, Banachiewicz has and will continue

21

to suffer, among other things, a significant loss of income and benefits, emotional injuries, as well as other losses associated with the effects upon Banachiewicz's employment, career and life's normal pursuits.

117.   As a direct and proximate result of Termine and Tylutki's violation of the New York City Human Rights Law, Termine and Tylutki are individually liable to Banachiewicz pursuant to §8-502(a) of said statute for damages and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," as has been judicially established.

118.   As a direct and proximate result of Termine and Tylutki's conduct complained of herein, Banachiewicz has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to her career and emotional pain and suffering, so that Banachiewicz seeks in this Fourth Cause of Action compensatory damages in the amount of Two Million Dollars ($2,000,000).

119.   Here, Termine and Tylutki's conduct towards Banachiewicz shows that they each acted with willful or wanton negligence, or recklessness, or a conscious disregard of Banachiewicz's rights under the New York City Human Rights Law, or that his unlawful actions against Banachiewicz were so reckless as to amount to a disregard of Banachiewicz's rights, so that in addition to all the damages inflicted upon Banachiewicz and in addition to all the measure of relief to which Banachiewicz may properly be entitled herein, Termine and Tylutki should additionally be required to pay punitive damages as punishment for their discriminatory conduct in the further amount of Three Million ($3,000,000) Dollars, in order to deter Termine and Tylutki and others similarly situated from engaging in such conduct in the future.

120.    Banachiewicz, therefore, seeks compensatory damages on this Sixth Cause of Action, including, among other things, the emotional harm inflicted upon her in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this cause of action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

**AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF BANACHIEWICZ AGAINST ALL DEFENDANTS FOR FAILING TO PAY OVERTIME IN <u>VIOLATION OF THE FAIR LABOR STANDARDS ACT</u>**

121.    Banachiewicz repeats, re-alleges and incorporates in full paragraphs 1 through 120 of this Complaint as though fully set forth at length herein.

122.    At all relevant times, upon information and belief, Defendants employed Banachiewicz within the meaning of the FLSA and Banachiewicz was a covered individual within the meaning of the FLSA.

123.    At all relevant times, Defendants willfully failed to pay Banachiewicz's overtime wages for all hours regularly worked in excess of forty (40) hours per week at a wage rate of one and a half (1.5) times the regular wage, to which Banachiewicz was entitled under 29 U.S.C. §§206(a) in violation of 29 U.S.C. §207(a)(1).

124.    Defendants' violations of the FLSA as described in this Complaint have been willful and intentional, as Defendants have not made any good faith effort to comply with their obligations under the FLSA with respect to the compensation of the Plaintiffs.

125.    Records, if any, concerning the number of hours worked, and compensation for same, by Banachiewicz, are in the possession and custody of Defendants, and Banachiewicz intends to obtain these records by appropriate discovery proceedings to be taken promptly in this

case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

126.    Due to Defendants' FLSA violations, Banachiewicz is entitled to recover from Defendants, jointly and severally, her unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

**AS AND FOR A EIGHTH CAUSE OF ACTION ON
BEHALF OF BANACHIEWICZ AGAINST ALL
DEFENDANTS FOR FAILING TO PAY OVERTIME
IN VIOLATION OF THE NEW YORK LABOR LAW**

127.    Banachiewicz repeats, re-alleges and incorporates in full paragraphs 1 through 126 of this Complaint as though fully set forth at length herein.

128.    At all times relevant to this action, Banachiewicz was employed by Defendants within the meaning of New York Labor Law Article 19, §§2 and 651.

129.    Defendants failed to pay Banachiewicz's overtime wages for hours worked in excess of forty hours per week at a wage rate of one and a half (1.5) times the regular wage to which Banachiewicz was entitled under New York Labor Law §652, in violation of 12 N.Y.C.R.R. 137-1.3, et seq.

130.    Due to Defendants' New York Labor Law violations, Banachiewicz is entitled to recover from Defendants, jointly and severally, her unpaid overtime wages and an amount equal to their unpaid overtime wages in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, including interest in accordance with New York Labor Law §198(1-a).

131.    Due to Defendants' New York Labor Law violations, Banachiewicz is entitled to recover from Defendants her unpaid minimum wage compensation, compensation for overtime hours worked, statutory penalties, damages for unreasonably delayed payments, reasonable attorney's fees and costs, disbursements of the action, pursuant to New York Labor Law §663(1).

**AS AND FOR A NINTH CAUSE OF ACTION ON BEHALF
OF BANACHIEWICZ AGAINST ALL DEFENDANTS FOR
VIOLATION OF THE NOTICE AND RECORDKEEPING
REQUIREMENTS OF NEW YORK LABOR LAW**

132.    Banachiewicz repeats, re-alleges and incorporates in full paragraphs 1 through 131 of this Complaint as though fully set forth at length herein.

133.    Defendants failed to provide Banachiewicz with a written notice of her applicable regular rate of pay, regular pay day, and all such other information as required by New York Labor Law §195(1).

134.    Defendants are liable to Banachiewicz in the amount of $5,000.00, together with costs and attorney's fees.

**AS AND FOR A TENTH CAUSE OF ACTION ON BEHALF
OF BANACHIEWICZ AGAINST ALL DEFENDANTS
FOR VIOLATION OF THE WAGE STATEMENT
REQUIREMENTS OF NEW YORK LABOR LAW**

135.    Banachiewicz repeats, re-alleges and incorporates in full paragraphs 1 through 134 of this Complaint as though fully set forth at length herein.

136.    Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notices at the beginning of employment and annually thereafter, to Banachiewicz, in violation of New York Labor Law.

137.    Defendants failed to provide Banachiewicz with wage statements, upon each payment of her wages, as required by New York Labor Law §195(3).

138.    Defendants are liable to Banachiewicz in the amount of $5,000, together with costs and attorney's fees.

139.    Due to Defendants' New York Labor Law violations, Banachiewicz are entitled to recover from Defendants for her unpaid minimum wage compensation, compensation for overtime hours worked, statutory penalties, damages for unreasonably delayed payments, reasonable attorney's fees and costs, disbursements of the action, pursuant to New York Labor Law §663(1).

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff demands judgment against all Defendants on the First Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages; against all Defendants on the Second Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages; against all Defendants on the Third Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages; against all Defendants on the Fourth Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages; against all Defendants on the Fifth Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000)

in punitive damages; against Defendant Termine and Defendant Tylutki, in the alternative, on the

Sixth Cause of Action in the sum of Two Million Dollars ($2,000,000) in compensatory damages

and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages; on

the Seventh Cause of Action in an amount to be determined at trial in accordance with the FLSA;

and on the Eighth, Ninth and Tenth Causes of Action in accordance with the New York Labor

Law; plus, for all Causes of Action, pre-judgment interest, the costs of this action and reasonable

attorney's fees, and for such relief as this Court deems just and proper.

<div style="margin-left:40%">

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By: _____

DAVIDA S. PERRY
BRIAN HELLER
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565

</div>